**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SUNDANCE DIGITAL PROCESSING, INC., Plaintiff, v. ROCKET EMS, INC. Defendant. | Case No. 3:26-cv-00125-ART-CLB **ORDER DENYING MOTION TO TRANSFER AND MOTION TO DISMISS** |

Plaintiff Sundance Digital Processing, Inc. brought suit against Defendant Rocket EMS, Inc. for breach of contract, breach of the implied warranties of merchantability and fitness for a particular purpose, and unjust enrichment stemming from two purchase order contracts for circuit boards. Before the Court is Defendant's motion to transfer the action to the United States District Court for the Northern District of California (ECF No. 3) and Defendant's motion to dismiss the case (ECF No. 4). As follows below, the Court denies both of Defendant's motions.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff alleges the following facts, which are taken as true for the purposes of the motions. In May 2023, Plaintiff placed a purchase order with Defendant, an electronics manufacturer, for the assembly and delivery of SE125 circuit boards. (ECF No. 1-1 at 5–6). Plaintiff placed a second order for the same type of circuit boards from Defendant in June 2023, again requesting that the boards

conform with IPC-A-610 Class III workmanship standards. (*Id.* at 6). Defendant accepted both purchase orders under a plan for staggered shipments of the completed boards. (*Id.*). Upon receipt of an initial shipment of circuit boards, Plaintiff discovered numerous defects, including that some units were "non-functional," had electrical failures incompatible with the IPC-A-610 Class III standards, or possessed soldering deficiencies. (*Id.*). Plaintiff corroborated the existence of these defects through third-party testing. (*Id.* at 6–7).

Defendant undertook repairs of the defective circuit boards at Plaintiff's subsequent request, but waited several months after request to begin repairs. (*Id.* at 7). Defendant acknowledged that the circuit boards were produced using an "incorrect heat reflow profile during the soldering process." (*Id.*). After receiving the repaired circuit boards from Defendant, Plaintiff discovered that the returned boards remained non-functional and possessed further defects incurred from the repair process. (*Id.*). Subsequent delivery installments were often months delayed. (*Id.* at 8). Defendant disputed Plaintiff's dissatisfaction with the circuit boards, instead characterizing their initial quote as containing a "typographical error" by referencing IPC-A-610 Class III workmanship standards, instead of Class II. (*Id.*). Plaintiff alleges substantial financial losses stemming from the non-conforming circuit boards, in addition to reputational harm and loss of future orders from existing customers.

Plaintiff initially filed their case in Nevada state court in January 2026, before Defendant sought removal to the United States District Court for the District of Nevada (ECF No. 1, ECF No. 6). Defendant raised their motion to transfer venue to the Northern District of California (ECF No. 3) and motion to

dismiss (ECF No. 4) on February 26, 2026. Plaintiff responded (ECF No. 12) and Defendant replied (ECF No. 15).

## II. MOTION TO TRANSFER

### a. Legal Standard

Under 28 U.S.C. § 1391, a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). However, "a district court may transfer any civil action to any other district…where it might have been brought" for the "convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a).

In making the evaluation that transfer is within the interests of convenience and justice, the district court may look to: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

**b. Discussion**

**i. The Action Could Have Been Brought in the Northern District of California**

The present action could have been initially brought in the proposed transferee court, because the requirements for subject matter jurisdiction and personal jurisdiction are met.

Like this Court, the Northern District of California would have subject matter jurisdiction over the action under 28 U.S.C. § 1332. The matter in controversy exceeds the value of $75,000, because Plaintiff has alleged losses exceeding $750,000 (ECF No. 1-1 at 9). Furthermore, the parties are "citizens of different states." Plaintiff is a Nevada corporation with its principal place of business in Washoe County (*Id.* at 4), while Defendant is a California corporation with its principal place of business in Santa Clara, California (ECF No. 1 at 3). The Northern District of California would have general personal jurisdiction over the action, because Defendant's principal place of business is located within the district. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 924 (2011)).

**ii. It is Within the Interest of Convenience and Justice for the Action to Remain Before this Court**

Weighing the venue transfer factors set forth in *Jones*, 211 F.3d 498–99, the Court finds that it must deny Defendant's motion to transfer (ECF No. 3). While not dispositive, the Court gives credence to Plaintiff's choice of forum in the District of Nevada. *See Lou v. Belzberg*, 834 F.2d. 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum…"). Furthermore, the Court finds that there is a sufficient nexus to the forum to warrant denying

the motion to transfer, because Plaintiff drafted the purchase orders with specific product specifications in Nevada, discovered deficiencies in the circuit boards in Nevada, and suffered alleged reputational and direct costs in Nevada (*see* ECF No. 1-1 at 6–9).

Defendant contends that "most" of the evidence, including records and witnesses related to the manufacturing of the circuit boards, is in California. (ECF No. 3 at 8). Even if many pieces of evidence are located in California, it is not within the interest of convenience and justice to transfer the case. A transfer to another forum "'…should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.'" *Operation: Heroes, Ltd. v. Proctor & Gamble Prods., Inc.*, 903 F.Supp.2d. 1106, 1115–16) (D. Nev. 2012) (citing *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F.Supp.2d 1033, 1045 (D. Minn. 2001)). The existence of evidence in California does not outweigh the aforementioned factors favoring the case to remain in the District of Nevada. Defendant also maintains a manufacturing facility within Nevada (ECF No. 15 at 7), indicating that it maintains contacts with the forum state. Therefore, the Court finds that it is within the interests of justice and convenience to deny Defendant's motion to transfer.

## III. MOTION TO DISMISS

### a. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Id.* at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**b. Discussion**

Defendant moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, because the complaint alleges violations of Nevada law. (ECF No. 4, ECF No. 1-1 at 10–14). Defendant argues that California law instead controls the dispute, such that Plaintiff's claims that either explicitly cite Nevada statutes or are "clearly intended to be brought under Nevada law" by implication should be dismissed. (ECF No. 4 at 10). In the alternative, Defendant seeks for Plaintiff to re-plead their claims under applicable California law. *Id.* The Court denies Defendant's motion to dismiss.

**i. Choice of Law Standard**

Federal courts sitting in diversity jurisdiction will apply the choice-of-law rules of the forum state. *Paxson v. Live Nation Ent., Inc.*, 778 F.Supp.3d 1113, 1123 (D. Nev. 2025) (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d. 1171, 1175 (9th Cir. 2014). If there is no applicable choice-of-law provision between the

parties, Nevada law requires a court to undertake the "substantial relationship test," using a factoral analysis identical to the Restatement (Second) of Conflict of Laws § 188. *Id.* at 1123–24. The test requires "the state whose law is applied [to] have a substantial relationship with the transaction; and the transaction must not violate a strong public policy of Nevada." *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993). The court will consider the following factors under the test: 1) "the place of contracting," 2) "the place of negotiation of the contract," 3) "the place of performance, 4) "the location of the subject matter of the contract," and 5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* Under § 188 of the Restatement, these factors "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971).

**ii. Nevada Law Controls This Action**

There is no choice-of-law provision in the purchase agreement between Plaintiff and Defendant. Turning to the "substantial relationship" test, Nevada law will control the dispute.

First, the Court finds that the "place of contracting" for the circuit boards was Nevada. The place of contracting is the location where the "last act necessary to create a binding contract" is performed. *Paxson*, 778 F.Supp.3d at 1124. Like in *Paxson*, where the court found that the "last act" of a contract was payment of amount due for goods and agreeing to terms, Plaintiff alleges that both their payment to Defendant under the purchase orders and their specifications for the "quantity, design, and materials" of the boards occurred in Nevada. (ECF No. 12 at 12–13). Taking Plaintiff's allegations as true, there is sufficient evidence to find that the "last act" to create a binding contract with Defendant was when Plaintiff paid for the purchase orders from their Nevada office in Washoe County. Although Defendant challenges the sufficiency of evidence supporting when or where Plaintiff made payment (ECF No. 15 at 8), Plaintiff has met their burden of a claim

to relief "plausible on its face." *Iqbal*, 556 U.S. at 678.

Defendant points to the delivery and possession terms of the purchase orders as providing conflicting evidence of the state where the "last act" occurred. This argument is unsuccessful. The purchase orders both contain a "FOB Origin" term under which Plaintiff took possession of the goods at Defendant's California facility. (ECF No. 3-1 at 2). Under the *Paxson* court's analysis that payment is a sufficient "last act" to create a binding contract, Defendant's argument falls. The *Paxton* court found payment of purchased tickets as the last necessary action to create a contract, instead of the moment of delivery or possession of the tickets. *Paxson*, 778 F.Supp.3d at 1124. Even if delivery and possession of the circuit boards occurred in California, Plaintiff's payment and product specifications originated from Nevada (ECF No. 12 at 12–13). Thus, the "place of contracting" for the contract was Nevada.

The second factor of the test ("place of negotiation") does not weigh in favor of either Nevada or California. Plaintiff argues that no contractual negotiation occurred, because the agreement consisted of two purchase orders without negotiation between the parties. (ECF No. 12 at 13). Because no negotiation occurred, Plaintiff characterizes the second factor as "neutral." *Id.* In turn, Defendant argues that the "negotiations, offer, acceptance, and performance" all occurred in California. (ECF No. 3 at 6). Defendant claims that Plaintiff's non-negotiation argument is unsupported by evidence and inconsistent with other arguments raised in their motion. (ECF No. 15 at 8). Indeed, Plaintiff argues in its same motion that "the negotiation and execution of the purchase orders at issue occurred in Nevada." (ECF No. 12 at 11). Because there is unclarity as to whether negotiations occurred over the purchase orders and no further evidence to support a finding of negotiations in either Nevada or California, the Court finds that the second factor is neutral.

Third, the "place of performance" factor also does not weigh in favor of

either Nevada or California. In *Paxton*, the court found the performance factor to be "insignificant" in a breach of contract action against a music festival and ticketing provider, because contractual "performance was 'divided more or less equally' among jurisdictions." *Paxson*, 778 F.Supp.3d at 1124 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188, cmt. e (1971)). The *Paxson* court reached this finding because the plaintiff purchased tickets and agreed to terms in Ohio, but one defendant hosted the festival in Nevada and the other defendant received ticketing complaints in California. *Id.* Contractual performance in this case appears likewise to be "divided" equally between Nevada and California. While the circuit boards were manufactured, tested, and shipped from California (ECF No. 3 at 5), Defendant allegedly failed to provide functioning boards or repaired boards to Plaintiff for use in Nevada (ECF No. 12 at 13). Because performance, or failure to perform, is divided across Nevada and California, the third factor under the "substantial relationship" test is neutral.

Fourth, the "subject matter" of the contract supports applying Nevada law. If a contract is about a "specific physical thing, such as land or a chattel…the location of the thing or of the risk is significant." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188, cmt. e (1971). A court will thus give weight to where a defective product is "currently located." *Richey v. Axon Enters., Inc.*, 437 F.Supp.3d 835, 847 (D. Nev. 2020) (finding fourth factor favors Nevada law in defective product action based on product's location in buyer's current possession). Plaintiff alleges that the boards were originally delivered to Nevada and that the repaired boards were again returned to Plaintiff in Nevada, with "approximately 7 SE125 boards" returned without the "requested or necessary repairs." ECF No. 1-1 at 7. While evidence related to Defendant's manufacturing *process* may be located in California, the subject matter of the contract centers around the defective *product* located in Nevada. Thus, the fourth factor of the test is in favor of Nevada law.

Lastly, the fifth factor ("the parties' domicile, residence, nationality, place of incorporation, and place of business") supports applying Nevada law. Under Restatement § 188, "[t]he fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is…the place where the other party to the contract is domiciled or does business." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188, cmt. e (1971). Plaintiff is a Nevada corporation whose principal place of business is in Nevada (ECF No. 1-1 at 4), while Defendant is a California corporation whose principal place of business is in California (ECF No. 1 at 3). However, Defendant also operates a manufacturing facility within Nevada. (ECF No. 15 at 7). Given that Defendant maintains contacts with Nevada, in addition to Plaintiff's contacts with the state, the fifth factor also supports applying Nevada substantive law.

Considering the five factors under the "substantial relationship" test, the Court finds that Nevada ultimately has the most substantial nexus to the dispute. Therefore, Nevada law will govern the dispute. Because Plaintiff alleges violations of Nevada state law for breach of contract, warranty, and unjust enrichment claims (ECF No. 1-1 at 10–14), Plaintiff has met their burden under Rule 8(a)(2). Plaintiff has pled sufficient facts to support "plausible" violations of Nevada law, *see Iqbal*, 556 U.S. at 678, and the Court denies Defendant's motion to dismiss.

## IV. CONCLUSION

It is therefore ordered that Defendant's motion to transfer venue (ECF No. 3) and motion to dismiss (ECF No. 4) are denied without prejudice.

DATED THIS 11th day of September.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE